IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| David Payton, #251272, ) | Civil Action No. 3:06-1787-CMC-JRM |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| William M. White, Warden, BRCI; and ) | |
| Henry D. McMaster, Attorney General ) | |
| of the State of South Carolina, ) | |
| ) | |
| Respondents. ) | |
| ) | |

Petitioner, David Payton ("Payton"), is an inmate at the South Carolina Department of Corrections serving a sentence of 25 years imprisonment for possession of crack cocaine with intent to distribute. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 14, 2006. The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on August 30, 2006. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on September 1, 2006, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner filed his responses on September 21 and November 30, 2006.

**Procedural History**

After a controlled purchase of crack cocaine in Anderson on February 8, 1998, officers obtained a search warrant for Payton's residence. The search warrant was served on Payton that day and he was arrested. Seized was 9.31 grams of crack cocaine, scales, a police scanner, a beeper, baking soda, and $1297 in cash. Additionally, $610 was seized that was in Payton's wallet.

Payton was represented by Fletcher Johnson at trial. A motion to suppress the evidence seized was denied. Payton presented a defense that the drugs had been planted in his residence. He was convicted. A direct appeal was filed through the South Carolina Office of Appellate Defense raising the following issue:

> Whether the trial judge erred in failing to suppress the search warrant and evidence from the search when the sworn affidavit failed to inform the issuing judge if the substance referenced was identified as a controlled substance based on scientific testing, nor did the information state whether the informants were reliable?

The conviction was affirmed by the South Carolina Court of Appeals. See State v. Payton, 2000-UP-195 (S.C. Ct. App. filed March 13, 2000). A petition for rehearing was denied May 2, 2000.

Payton filed an application for post-conviction relief ("PCR") in the Court of Common Pleas for Anderson County on May 7, 2000 (App. 8) followed by an amended application (App. 14). An evidentiary hearing was held on November 20, 2003. Charles Griffin represented Payton. Payton appeared and testified. The PCR court issued a written order dismissing the PCR on December 16, 2003. (App. 1).

Payton filed a petition for writ of certiorari in the South Carolina Supreme Court generally asserting that the PCR court erred in denying the PCR. Payton argued that his trial and appellate attorneys were ineffective and that he was entitled to a new trial based on after discovered evidence, i.e., a discrepancy in the dates in the chain of custody of the drugs. The petition for writ of certiorari was denied by order of the South Carolina Supreme Court dated February 15, 2006. The Remittitur was returned on March 3, 2006.

## **Grounds for Relief**

2

Payton asserts that he is entitled to a writ of habeas corpus on the following grounds:

GROUND ONE:          Conviction obtained on insufficient evidence

SUPPORTING FACTS:    There was no credible evidence on which to base a conviction that I actually or constructively possessed crack cocaine for distribution.

GROUND TWO:          Counsel never argued forcefully that this case was based solely on the testimony of an informant and that he was doing it simply to lessen what sentence he might receive for wrongdoings of his own.

GROUND THREE:        Failure of Court to ascertain "Chain-of-Custody report

SUPPORTING FACTS:    There was never a clear record established of the chain of custody of the drugs taken from my home.

## Discussion

**A.     Procedural Bar**

Respondents assert that none of Payton's grounds have ever been presented to the South Carolina Supreme Court and are, therefore, procedurally barred.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1.     Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C.

§ 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A)  the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i)  there is either an absence of available State corrective process; or
> >
> > (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. See O'Sullivan v. Boerckel, 526 U.S. 838 (1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

4

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[1] If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. See Rose v. Lundy, supra.

### 2.    Procedural bypass[2]

---

[1] In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[2] This concept is sometimes referred to as procedural bar or procedural default. If a petitioner
(continued...)

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

---

[2](...continued)
procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the

7

failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his

factual innocense. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocense as to his guilt, Id., or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocense. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

Payton appears to concede that he has failed to properly present his claims to the South Carolina Supreme Court.[3] In his response filed November 30, 2006, he asks that his case be remanded to the South Carolina courts so he can advance these grounds. This argument ignores the fact that under South Carolina procedure such an attempt would be viewed as a successive petition. Payton does not argue that his default should be excused, and he has not shown cause or actual prejudice.

### B. Insufficient Evidence

Payton claims that "(t)here was no credible evidence on which to base a conviction that I actually or constructively possessed crack cocaine for distribution." Trial counsel

---

[3]As stated above, Payton's third ground for relief concerning after-discovered evidence was included in his petition for writ of certiorari. However, it was not addressed in the PCR court's order of dismissal. PCR counsel made no motion to alter or amend the judgment, Rule 59(e), SCARCP, to require a reasoned rejection of the claim. See Pruitt v. State, 310 S.C. 254, 256, 423 S.E.2d 127, 128 (1992) (PCR "counsel has an obligation to review the order and file a Rule 59(e), SCARCP motion to alter or amend if the order fails to set forth the findings and reasons for those findings as required by § 17-27-80 and Rule 52(a), SCARCP"). South Carolina applies a procedural bar to such issues. Plyler v. State, 309 S.C. 408, 409, 424 S.E.2d 477, 478 (1992).

made appropriate motions for directed verdict under South Carolina procedure. However, sufficiency of evidence was not raised on direct appeal.

A habeas petitioner's claim that he was convicted on insufficient evidence is cognizable as a due process violation. Jackson v. Virginia, 443 U.S. 307 (1979), Schulp v. Delo, 513 U.S. 298 (1995). The due process clause is not violated if, viewing the evidence in the light most favorable to the State, and giving the prosecution the benefit of all reasonable inferences, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Evans-Smith v. Taylor, 19 F.3d 899, 905 (4th Cir. 1994). This court is required to review and evaluate all of the evidence presented at trial in assessing such a claim. Wright v. West, 505 U.S. 277 (1992). Completely circumstantial evidence may be adequate to support a conviction. Stamper v. Munice, 944 F.2d 170 (4th Cir. 1991).

As recited above, the search of Payton's residence provided ample evidence to support the conviction. The officers discovered slightly over nine grams of crack cocaine during the search. At trial a police officer who was qualified as an expert testified that amount of crack cocaine could be sold as 45 twenty-dollar "rocks." (App. 120). The officers also found a scale, baggies, a police scanner, a beeper, and a large amount of cash. Further, the confidential informant testified that he had purchased crack cocaine, including the controlled purchase which formed the probable cause for the search warrant, from Payton. (App. 169-78).[4]

---

[4]The confidential informant, Derrick Thompson, was called as a defense witness. At the PCR hearing, counsel testified that he called Thompson to show that he (Thompson) was a drug user and dealer who was attempting to "work off" pending charges. Importantly, counsel wished to show that the marked bills given to Thompson for the controlled purchase were not found during the search. The PCR court found that "(t)rial counsel articulated valid strategic reasons for calling Thompson." (App. 5).

### C.      Ineffective Assistance of Counsel

Payton asserts that his trial counsel was ineffective because he "never forcefully argued that this case was based solely on the testimony of an informant and that he was doing it simply to lessen what sentence he might receive for wrongdoings on his own." This specific ineffective assistance of trial counsel was not raised in the PCR application or addressed by the PCR court.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

* * *

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

First, the undersigned observes that the premise of Payton's claim is inaccurate. His conviction was based on the results of the search, not the testimony of Thompson. The defense called Thompson to attempt to show that he was not credible. During closing argument, counsel specifically attacked Thompson arguing that none of the marked bills were recovered even though the search took place within hours of the controlled purchase. (App. 220-21).

### D.    Chain of Custody

After the PCR was filed, Payton made a request to obtain records from SLED under the Freedom of Information Act. He received a "Custody Details Report" which shows the chain of custody of the crack cocaine found at Payton's residence while it was in SLED's possession for testing. (App. 264). Payton noticed a discrepancy between the Custody Details Report and the trial

testimony of Officer Stacy Blair of the Anderson City Police Department.[5]  At trial, Blair testified that he took the crack cocaine and submitted it for analysis on March 4, 1998. (App. 140).  However, the Custody Details Report shows that the drugs were delivered to SLED by Blair on April 3, 1998. (App. 264).

There is nothing in the record to show that Payton amended his PCR to assert a claim concerning this discrepancy.  However, PCR counsel mentioned the issue while defining Payton's claims for the PCR court. (App. 30-31, 34).  Payton testified about the discrepancy. (App. 45-47), and Blair affirmed his trial testimony about the delivery on March 4, 1998. (App. 56).  The PCR court did not specifically discuss the issue in its order of dismissal.  In the petition for writ of certiorari, Payton asserted that he was "entitled to a new trial based on newly discovered evidence in that [he] discovered there was a discrepancy in the dates that the drugs were received by SLED for testing." (Petition for Writ of Certiorari, p. 4).  The State did not mention the issue in its Return. The order denying the petition for writ of certiorari contained no discussion of the issues.

As noted above, this claim is procedurally barred because it was not addressed by the PCR court.  This deficit in the record also obscures the precise basis for the claim.  Payton has never indicated that the discrepancy in dates violates a constitutional provision.  The admission of the drugs into evidence at trial is purely a matter of state law and procedure.  Normally, this would be a matter raised on direct appeal.  However, Payton did not discover the discrepancy until after his conviction had been affirmed on direct appeal.  His appropriate remedy would be to file a motion

---

[5]Blair served as the evidence custodian during the search.  He testified that he took possession of the drugs and later transported it to SLED.

13

for a new trial in state court based on after discovered evidence. In order to prevail on such a motion, he would have to show that the after-discovered evidence:

(1) is such that it would probably change the result if a new trial were granted;

(2) has been discovered since the trial;

(3) could not in the exercise of due diligence been discovered prior to trial;

(4) is material; and

(5) is not merely cumulative or impeaching.

State v. Spann, 344 S.C. 618, 619-20, 513 S.E.2d 98, 99 (1999).

Respondents assert that these claims are not cognizable because they involve issues of state law which should not be considered by a federal court. "Under 28 U.S.C. § 2241, a federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37 (1984). The statute specifies that a prisoner is entitled to a writ of habeas corpus when he is in custody "in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241.

The Supreme Court reaffirmed this understanding of § 2241 in the case of Lewis v. Jeffers, 497 U.S. 764 (1990). "Because federal habeas corpus relief does not lie for errors of state law . . ., federal habeas review of a state court's application of [state law] is limited." In Estelle v. McGuire, 502 U.S. 62 (1991), the Court reiterated,

> [W]e reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. (Citations omitted).

Unless the petitioner can point to a specific constitutional protection which was denied him, or show that the error in state law substantially impaired his trial's fairness or resulted in a complete miscarriage of justice, he may not obtain relief, Chance v. Garrison, 537 F.2d 1212 (4th Cir. 1976), citing Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960).

Given the overwhelming evidence presented at trial, the undersigned concludes that even if this claim of state law error were considered on the merits, Payton could not prevail.

## **Conclusion**

Based on a review of the record, the undersigned recommends that respondents' motion for summary judgment be granted, and the petition dismissed without an evidentiary hearing.

>Respectfully submitted,
>
>s/Joseph R. McCrorey
>United States Magistrate Judge

January 18, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).